4370. SOUTHERN BELL TELEPHONE & TELEGRAPH COMPANY *v.* DAVIS.

1. A petition alleging, in substance, that while the plaintiff was walking upon the public street of a city he came in contact with a broken wire of the defendant telephone company, which was lying on the sidewalk, heavily charged with a dangerous current of electricity, that he did not see the wire until he suddenly came in contact with it, and that in his efforts to extricate himself therefrom his hand was burned by the current of electricity and totally destroyed, sets out a cause of action for damages against the telephone company.

2. Amendments to the petition, setting forth additional acts of negligence, relating to and amplifying the same general charges of negligence made in the petition, did not constitute a new cause of action, and were properly allowed.

3. Where a wire of a telephone company is found broken and lying on a sidewalk, heavily and dangerously charged with electricity, one who is injured by coming in contact therewith, without fault on his part, is not bound, in order to fix liability for negligence on the part of the company having ownership, charge, and control of the wire, to prove specifically how or in what manner it was broken and became charged with electricity, or how long it had been broken and lying upon the sidewalk in such dangerous condition. The presence of the broken wire on the sidewalk, dangerously charged with electricity, would be sufficient to raise an inference of negligence against the telephone company. In the present case the allegations of negligence were substantially proved as laid.

4. One who is walking on the public highway of a city, seeing a broken electric wire on the sidewalk, with nothing to indicate that it is a live or dangerous wire, is not necessarily guilty of contributory negligence because he voluntarily picks it up and throws it off the sidewalk out of his way. If the wire is charged with electricity and he is injured by contact with it, he may recover damages, according to the facts, either from the city or from the electric company owning and controlling the wire, or from both if the evidence shows that they were joint tort-feasors.

5. When suit is brought against two or more as joint tort-feasors, a verdict may be returned against one only, if the facts authorize it.

6. The verdict is not so excessive as to manifest bias, prejudice, mistake, or any improper influence, and, having been approved by the trial court, this court will not disturb it.

                    DECIDED DECEMBER 21, 1912.

Action for damages; from city court of Thomasville—Judge W. H. Hammond. June 22, 1912.

Davis brought suit against the Southern Bell Telephone & Telegraph Company, the City of Thomasville, and McCarty and Wood as employees of the telephone company, to recover damages for personal injuries, alleging, in substance, as follows: The Southern Bell Telephone & Telegraph Company is a corporation, owning and operating in the City of Thomasville a general telephone business, with an agency and office in said city. The City of Thomasville is a municipal corporation, situated in the County of Thomas, State of Georgia, and is operating a system of electric wires in and for the City of Thomasville, through the streets of the city. The defendant McCarty, as an employee of the telephone company, was charged with the duty, among other things, of removing telephones and wires from buildings in the City of Thomasville, and of performing any and all acts necessary to the proper removal of such wires from such buildings. The defendant Wood was employed by the telephone company as foreman, it being his duty to superintend and direct, in behalf of the master, the removal of telephones and wires from buildings, and the construction of all wires, poles, and other properties operated by the telephone company, in said city. The telephone company, at the date of the injury, had constructed and was using and operating a system of poles and telephone wires in the City of Thomasville, and had constructed and was maintaining upon the streets of the city a large number of poles, used by it for the purpose of furnishing lights and electricity to the citizens of said city for profit, both by day and by night; and the electric wires of the city, both by day and by night, were heavily charged with electricity. The wires of the telephone company and of the municipal corporation were in close proximity, passing through the city. Just prior to the injury, McCarty, acting within the scope of his authority as an employee of the telephone company, and at the direction of the company, had removed the telephone from a house near the place of the injury, and, in so doing, had severed the wire running from the top of the telephone pole to the telephone in the house, at a point between the telephone and the pole, and had negligently left the severed wire unfastened and omitted to remove it from the premises, and negligently permitted it to remain stretched

from the top of the pole, across the sidewalk, into said premises. The wire, having thus been left unfastened, became slackened, and, as a result thereof, it sagged and came in contact with one of the electric wires of the City of Thomasville, at a point specifically described in the petition, and then and there, because of such contact, became heavily charged with electricity. On the day preceding the injury the said telephone wire fell across the sidewalk on Parnell street while thus charged with electricity, and remained across said sidewalk until some time during the following day. The City of Thomasville, the Southern Bell Telephone & Telegraph Company, Wood, and McCarty knew on the day preceding petitioner's injury that said wire was down across the sidewalk and in contact with the electric wires of the City of Thomasville, and was heavily charged with electricity, and, with knowledge thereof, all of the defendants permitted said wire to remain in this condition across the sidewalk. Early in the morning of July 24, 1911, while petitioner was passing along said sidewalk, going to his place of business, and while in the exercise of all ordinary and reasonable diligence and care for his own safety, without any fault upon his part, and without any knowledge that said wire had fallen down across the sidewalk, and without any knowledge that said wire had ever been severed from the telephone, he suddenly and without warning came in contact with said wire, which was then and there heavily charged with electricity, and by reason of such contact he was permanently injured. Upon coming in contact with the wire, petitioner immediately received a powerful current of electricity into his body, the effect of which was to hurl him against the ground, and, in a spasmodic effort to extricate himself, his left hand came in contact with said wire and he was unable to release himself therefrom. His left hand was totally and permanently disabled, and the use of his fingers and hand totally destroyed. At the time of the injury petitioner was twenty-nine years of age, in good health, and physically sound, was employed by the Atlantic Coast Line Railroad Company in the capacity of car-repairer, and was earning twenty-five cents per hour. He was left-handed, and, as a result of his injury, his ability to labor was totally destroyed. The injury to his hand caused extreme pain and suffering, and a distortion of the fingers, which greatly humiliates him and causes him extreme pain and suffering. He alleges that the de-

fendant McCarty was negligent in not removing said telephone wires from said building, and in allowing them to remain over and across the sidewalk after they had been detached from the telephone, he knowing at the time that the telephone wire, when tightly stretched, was in very close proximity to the live wires of the City of Thomasville, and liable to come in contact therewith by reason of the fact that the cutting of the wire from the telephone caused said wire to slacken. The defendant McCarty was further negligent in that, having received knowledge that the said telephone wire was down and across the sidewalk and charged with electricity, prior to the injury complained of, he failed to procure the City of Thomasville to shut off the electric current from the electric wire in contact with said telephone wire, and failed to remove said wire from said sidewalk. The defendant Wood was negligent, in that, having actual notice that said wire was charged with electricity and across said sidewalk, he failed to remove the same as it was his duty to do, and in that he failed to procure the City of Thomasville to shut off the electricity from the electric wire with which said telephone wire was in contact. In all and each of the particulars named the telephone company was negligent, and was negligent through its employees, and their joint and combined negligence caused the injury and contributed thereto. The City of Thomasville was negligent in allowing the telephone company's wires to remain in close proximity to the electric-light wires without the same being properly insulated, and was also negligent in allowing the telephone company to erect wires over and above its electric wires, without proper insulation thereon. The City of Thomasville was negligent in that it failed, after actual notice prior to the injury that the electric wire and the telephone wire were in actual contact, to shut off the electric current, and to cause the telephone company to remove the telephone wire which had come in contact with its electric-light wire. Both the City of Thomasville and the telephone company were negligent, in that they both knew that the insulation was worn off said telephone wire and failed to remedy the same. Both the defendant corporations knew, prior to the injury, that the telephone wire was in contact with said electric-light wire and was heavily charged with electricity, and was down and across the sidewalk, and permitted it to remain. These joint and combined acts of negligence on the

part of the two defendant corporations contributed to, and were the direct and proximate cause of the plaintiff's injury.

By an amendment the petitioner alleged, that McCarty was employed by the telephone company as lineman and repairman of its wires and apparatus, and that, as such, it was his duty to repair all damage to wires, and to have discovered the contact between the wires referred to in the petition, and to have repaired the same, and to have removed all wires of the telephone company that might have fallen on the streets or sidewalks of the city; that it was the duty of Wood to superintend and direct and keep in suitable repair all of the telephone wires of the telephone company, and to remove and cause to be removed all wires of the telephone company that might be on the streets or sidewalks of the city; that the wires of the telephone company were not insulated at any point, and particularly were not insulated at the point referred to in the petition, where they crossed the electric-light wires of the City of Thomasville; also that the telephone company had negligently omitted to provide a guard-wire for the purpose of preventing broken or slackened wires from coming in contact with said electric-light wires, and that if a suitable guard-wire had been constructed at said point, said contact could not and would not have taken place. The allowance of this amendment was objected to by the telephone company and McCarty, on the ground that it was an effort to set up a new and distinct cause of action. The objection was overruled, and exceptions pendente lite were preserved.

The original petition and the petition as amended were demurred to by the telephone company, on the grounds, that the allegations set forth no cause of action, and that, construing the allegations of the petition most strongly against the plaintiff, it appeared that his own negligence caused his injury, in that he could, by the exercise of ordinary care and diligence, easily have avoided coming in contact with the live wire on the sidewalk. The demurrer was overruled, and exceptions pendente lite were preserved.

On the trial a verdict was rendered against the telephone company alone, for $8,500, and the company filed a motion for a new trial, which contained, besides the usual grounds, the following special assignments of error: (1) That the verdict, being against the movant, and not against the defendant McCarty, is incon-.

sistent and self-contradictory and contrary to law, in that the allegations in the original petition are that it was the business of McCarty, as an employee of the telephone company, to remove telephones when discontinued, and to remove wires connected therewith, so as to avoid the possibility of injury; that in the first amendment to the petition it is alleged that it was McCarty's business to repair broken and damaged wires, and to remove any wires that might have fallen; that these allegations were admitted by McCarty and by the telephone company in their answers, and that the telephone company could have been negligent only through the negligence of McCarty, and the verdict releasing him must necessarily release the telephone company.   (2) That the evidence failed to sustain the allegations of the petition that the sagging of the wire, by which it came in contact with the city's wire and became charged with a powerful current, was caused by the wires being allowed to hang loose from the house; that, on the contrary, the evidence showed conclusively that the sagging loose of the wires from the house could not have caused any slackening or sagging back where the point of contact was, and, therefore, the plaintiff failed completely to prove the negligence and the cause of his injury, on which his entire case was based, and there was a fatal variance between what was alleged and what was proved.   (3) That the verdict is excessive, in that it provides fully for the plaintiff's life and for permanent disability, while the evidence shows that he was only partially disabled, and the evidence also shows that he was largely at fault in contributing to his injury, and also that his injury was due largely to his own negligence in not having his hand treated properly.   (4) That the verdict was contrary to law, in that the evidence shows that the plaintiff, by the exercise of ordinary care, could have avoided injuring himself, the evidence being conclusive that there was no necessity for his touching the wire on the sidewalk, and, therefore, that his injury was due to his own voluntary act, and, therefore, he was guilty of negligence, as a matter of law.   (5) That the evidence failed to show any negligence on the part of the telephone company; that there was no presumption of negligence against the company on the facts proved; that the company had no notice that the wire was down; nor could it with reasonable promptness have discovered that the wire was down before the injury.   (6) That the verdict was so excessive as to indicate prejudice and bias.

3

*H. E. W. Palmer, Brutus J. Clay, J. H. Merrill,* for plaintiff in error.

*Theodore Titus,* contra.

HILL, C. J. (After stating the foregoing facts.)

All the foregoing questions raised by the record are ably and elaborately presented to this court by counsel for the plaintiff in error, and they are entitled to a decision on each of the questions submitted.

1, 2. The allegations of the petition, in the opinion of this court, clearly show a cause of action against the defendants, jointly and severally, and there was no error in overruling the demurrer. The allegations, so far as the telephone company is concerned, bring it squarely within the principle laid down by the Supreme Court in *Southern Bell Telephone Co.* v. *Howell,* 124 *Ga.* 1050 (53 S. E. 577, 4 Ann. Cas. 707). Indeed, we see no substantial difference between the allegations of the petition in the present case on the subject of liability and the allegations of the petition in that case. The underlying principle of liability of a telephone company which would arise on proof of the allegations made by the petition may be generally stated as follows: The privilege of running its wires through the streets of a city in close proximity to the electric-light wires of the city, which were highly charged with electricity, entailed upon the telephone company the duty of exercising a very high degree of care to maintain its wires intact and to prevent their proximity to the electric-light wires from becoming a source of danger to the public; and it would seem sufficient to show a lack of this care, where the undisputed evidence shows that a broken wire was lying on the sidewalk, under conditions that rendered possible serious injury to persons lawfully using the sidewalk. "Unexplained, the presence on the highway of the charged and broken wire, and the fact of injury received therefrom, justified an inference of negligence in the defendant, in whose control and management it was. Such an inference has been judicially permitted even when the wire that broke received the electricity from a wire on which it fell." Newark Elec. L. & P. Co. *v.* Ruddy, 62 N. J. Law, 505 (41 Atl. 712, 57 L. R. A. 624).

3. And right here we may eliminate from the case the question of a variance between the allegations of the petition and the proof

on the question of the slackening or sagging of the telephone wire. We do not think it makes any material difference whether this slackening or sagging caused the telephone wire to break and fall across the electric-light wire and thus become charged with electricity, or not. The fact is indubitable, from the evidence, that the telephone wire did break and did become heavily charged with electricity by coming in contact with and falling across the electric-light wire. There is sufficient evidence to show that this telephone wire was cut loose from the telephone in the adjacent house and was left down for some time in that broken condition. But the fact that a broken telephone wire, heavily charged with electricity, was lying across the sidewalk affords a strong presumption of negligence. We may indulge the presumption that a telephone wire of proper size and quality, skilfully set up, and inspected with reasonable care and frequency, will not spontaneously break; and where such breakage occurs, the inference either of defective construction or defective quality, or of some undue and unusual strain somewhere, is inevitable. And on this point we do not think it material to consider, in the absence of proof of any unusual breakage of the wire which might have been caused by a storm, the short space of time between the time when the broken wire was found on the sidewalk and the injury which was caused thereby to the plaintiff. As was said in the Ruddy case, supra, the plaintiff was not bound to prove when the wire came down. "Its presence at the time and place of injury sufficed. Had it appeared affirmatively that the wire had but just fallen, the presumption of negligence would have been simply narrowed to the breaking of the wire. Only in case it had appeared that the breaking was without negligence would the question of reasonably prompt removal have arisen." In other words, in our opinion, to establish a prima facie case of negligence, all the plaintiff would have to show would be a broken wire, charged with electricity, lying on the sidewalk. When these facts are shown, the doctrine of res ipsa loquitur applies, and the burden is cast upon the defendant to remove the inference of negligence against it, which arises upon proof of these facts. Of course, if it appears, notwithstanding this negligence of the defendant, that the plaintiff was a mere volunteer, or if, by the exercise of ordinary diligence, he could have avoided the injury to himself caused by the defendant's negligence, his right of recovery

would be entirely destroyed, or the amount of his recovery would be diminished.

4. It is contended that the allegations of the petition, construed most strongly against the plaintiff, show that he deliberately and voluntarily took hold of the broken live wire while it was lying on the sidewalk, and that this wire would have been harmless but for this voluntary act of the plaintiff, and that, therefore, his own negligence was the proximate cause of his injury. The allegations of the petition on this point, under the decision in the case of *Southern Bell Telephone Co.* v. *Howell,* supra, are sufficient, we think, to meet a general demurrer, even when construed most strongly against the petitioner; for he shows that he suddenly, without warning, came in contact with a broken wire, heavily charged with electricity, which was lying on the sidewalk, and was thereby injured. The evidence in support of this allegation is to the effect that he was walking along the sidewalk, about 6.30 o'clock in the morning, on the way to his work; that he was not looking in front, but that his head was down, and that before he saw the wire or knew of its presence, he was "right into it," and threw out his hand to grab it; that he could not turn it loose and could not get away from it; that he "got right into it before he knowed it." The allegation and the proof, therefore, we think show that the petitioner came suddenly in contact with this wire, broken and lying across the sidewalk, without seeing it, and that in a spasmodic effort to extricate himself from the wire, he took hold of it. Clearly, this would not make him guilty of such a voluntary act of taking hold of a wire, dangerously charged with electricity, as would show any culpable negligence on his part. He would have the right as a pedestrian of the city to assume that the sidewalk was free from such dangerous obstructions. He was not called upon, in the exercise of due diligence, to be on the lookout for any such dangerous obstruction; but even if he had seen the wire, and had taken hold of it in an attempt to throw it out of the way, in the absence of any indication that it was a live wire, this would not be such negligence on his part as would bar his right of recovery. "One who is traveling along a highway and sees a loose electric wire upon the street, with nothing to show that it is a live or dangerous wire, may voluntarily pick it up and throw it out of the highway, and if the wire is a live wire, and he is injured thereby, he can

recover damages; for picking up the wire and throwing it out of the way is an incident of travel along the highway, and is not contributory negligence on the part of the traveler. He may recover either from the electric company or the city." Croswell, Electricity, § 251. It may be stated, as a general rule, that whether or not the plaintiff is guilty of contributory negligence in picking up a live wire off the sidewalk and throwing it out of his way is a question of fact, to be determined by the jury according to the particulars of each case. See McKay v. Sou. Bell Tel. Co., 111 Ala. 337, 19 Sou. 695, 56 Am. St. R. 59, and citations in the notes to that case in 31 L. R. A. 589. The questions raised on the demurrer have been considered in connection with the evidence in support of the allegations of the petition, and we are very clear not only that the allegations were sufficient to show a cause of action against the telephone company, but that these allegations were substantially proved as laid.

What we have said relating to the liability of the telephone company is fully supported by the decision of the Supreme Court in *Eining* v. *Georgia Ry. & Elec. Co.,* 133 *Ga.* 458 (66 S. E. 237). The allegations of the petition in that case are substantially the same as the allegations of the petition in this case as amended, and the Supreme Court, in discussing these allegations, used the following language: "Where wires charged with a deadly current of electricity are strung along a public highway, the degree of care required to prevent injury to property or persons lawfully on the highway is governed by the amount of danger attending such use of the highway by the owner of the wires. In 2 Cooley on Torts (3d ed.), 1492, 1493, it is said: 'Electricity is an invisible, impalpable force, highly dangerous to life and property; and those who make, sell, distribute, use, or handle it are bound to exercise care in proportion to the danger involved. . . Those using the public ways for electric wires carrying a dangerous current are bound to use a very high degree of care in the construction, use, and repair of such lines, to prevent injury to those lawfully upon such ways. A broken or fallen wire in a street, charged with a dangerous current of electricity, affords a presumption of negligence on the part of the owner of the wire. . . Where the wires of two companies cross or are otherwise so related that there is danger of contact between them, there is a duty on both to guard against

such contact, and for a neglect of this duty the companies are jointly and severally liable. Cases of this sort arise mainly where telegraph or telephone wires cross or parallel light or trolley wires.'". This statement of the law applicable to such cases is quoted with approval by the Supreme Court; and we think this ruling is controlling on the question of liability in the present case, for here it is distinctly alleged and shown that the telephone wires were in proximity to the electric-light wires of the city, and that this proximity made it probable that the telephone wires would at some time come in contact with the electric-light wires; and certainly it was the duty, under these circumstances, of both these corporations to guard against danger from this probable contingency; and for injury arising from the failure of either company to do so both companies are jointly and separately liable. In the same case, further on in the opinion, the Supreme Court quotes the following extract from 1 Thompson on Negligence, § 805: "Although an electric-railway company may be under the duty of maintaining guard-wires between its wires and the wires of a telephone company fastened above it, yet this will not exonerate the telephone company from the payment of damages to one injured in consequence of its negligence in so insecurely fastening its wire that it falls upon the wire of the railway company." "And it is held to be negligence on the part of a company to suspend wires in such a position that, in the event of their breaking, they will become charged with a dangerous current of electricity from wires underneath." Joyce, Electric Law, § 607. We conclude this discussion of the merits of the case in connection with the allegations of the petition with the statement not only that the trial court was right in overruling the demurrer, but that the allegations of the petition, both in its original form and as amended, were substantially supported by the evidence.

What we have said above makes it unnecessary to consider whether the defendant telephone company had actual or constructive notice of this wire being broken and lying across the sidewalk, in time to have repaired it before the accident occurred. What we have said makes this question immaterial; for, as we have said, the fact that a broken wire, heavily charged with electricity, was lying on the sidewalk, in the absence of any explanation by the defendant which would exonerate it from negligence, raises an in-

ference of negligence,—not negligence in permitting it to lie on the sidewalk in this condition, but negligence which goes deeper and is in the method of construction, or the use of defective material. Only in the event that the wire was broken by some cause over which the defendant had no control could the question of reasonable notice of its condition be at all material.

5. What we have said also makes it unnecessary to discuss specifically the question as to whether or not the verdict against the telephone company alone is contrary to law. The decision in *Eining* v. *Georgia Ry. & Elect. Co.*, supra, with citations, states the principle of law very strongly, that, under facts substantially the same as those of the present case, all the defendants, as joint tort-feasors, would be liable, either jointly or separately; and it has been repeatedly held by this court and by the Supreme Court that in an action against joint tort-feasors, a judgment may be had against one alone. *Finley* v. *Sou. Ry. Co.*, 5 *Ga. App.* 722 (64 S. E. 312); *Western & Atlantic R. Co.* v. *Henderson*, 6 *Ga. App.* 385, 388 (65 S. E. 48), and cit.

6. The contention that the verdict is excessive for any of the reasons stated is without substantial merit. It is immaterial that the plaintiff after his hand was injured could by proper surgical treatment have minimized the damage to himself, and that if his hand had received the proper surgical treatment, it would not have been totally disabled. As to this the evidence is in some conflict, but largely preponderates in favor of the contention of the plaintiff that his hand was totally destroyed by the injury, and that no sort of medical or surgical treatment would have given any substantial relief. Conceding that the man's hand was totally destroyed, taking into consideration the pain and suffering, and the mortification over the consequent deformity, damages for the loss of the hand being exclusively within the enlightened consciences of impartial jurors, this court can not say that the amount of the verdict is so grossly excessive as to manifest prejudice, or bias, or mistake, or improper motive on the part of the jury. This court could not say, as a matter of law, that the total loss of a hand, and the consequent reduction of earning capacity on the part of a man who earned his living almost exclusively by the use of his hands, would not of itself be sufficient to support the verdict. Certainly it is sufficient to exclude the conclusion that the verdict was so grossly

excessive as to indicate prejudice, or bias, or other improper motive on the part of the jury, when the law devolves upon the jury the exclusive right to determine the amount of damages arising from the pain and suffering in the burning of the hand by electricity, and in the permanent mortification and humiliation of possessing a deformed hand, and especially when the verdict meets with the approval of the trial judge. *Sou. Ry. Co.* v. *Wright*, 6 *Ga. App.* 172 (64 S. E. 708); *Merchants & Miners Trans. Co.* v. *Corcoran*, 4 *Ga. App.* 654 (62 S. E. 130); *Murphy* v. *Meacham*, 1 *Ga. App.* 654 (57 S. E. 1046); *Hilton & Dodge Lumber Co.* v. *Ingram*, 135 *Ga.* 696 (70 S. E. 234). After giving the case a most careful consideration, we fail to find any error of law. The verdict is amply supported by the evidence, and the judgment refusing a new trial must be        .                                        *Affirmed.*