## MAYOR AND COUNCIL OF UNADILLA v. FELDER.

1. This is an action by a boy seven years of age, suing by next friend, for damages, against a municipal corporation. It is alleged that the defendant allowed certain material to escape from a gas-plant operated by the defendant, and to flow in an open ditch along a street near the edge of a sidewalk, some of which, on account of a stone or other heavy object being tossed therein by another boy of tender years, was caused to splash and strike the plaintiff in the face while he was walking along the sidewalk, producing injury. Properly construed, the petition alleges that the matter so escaping from the defendant's gas-plant and allowed to run along the open ditch was a dangerous agency, and needed only to be brought in contact with the person of an individual to produce injury to him. So construed, the petition sufficiently alleges negligence upon the part of the defendant.
2. It is a question of fact whether the defendant's negligence was the proximate cause of the plaintiff's injury; and the petition was not subject to demurrer on the ground that the injury was attributable to the act of an independent agency of which the defendant had no control.
3. The action was not barred by the statute of limitations.

JULY 11, 1916.

Action for damages. Before Judge George. Dooly superior court. August 5, 1915.

Noel M. Felder, by next friend, instituted an action for damages against the Mayor and Council of Unadilla, a municipal corporation. The defendant demurred to the petition, and excepted to the judgment overruling the demurrer. The petition, as amended, alleged the following, in substance: The defendant maintained and operated an acetylene gas-plant located immediately north of Borum Avenue, which was a street that extended east and west through the town. In operating the gas-plant the defendant "allowed a combination of calcium carbide and water, and other poisonous and corrosive products, to escape from said plant and run into an open ditch" extending along Borum Avenue. The substance thus allowed to escape was described in other portions of the petition as "poisonous and corrosive, and contained something in the nature of acid, which was burning and which was dangerous." In another part of the petition it was referred to as "sulphurous and burning." The public school was located on Borum Avenue, west of the block containing the gas-plant, and it was necessary and customary for the plaintiff and most of the school children of the town going to and from school to walk along

the sidewalk of Borum Avenue, opposite the block on which the gas-plant was located. On December 23, 1912, while the plaintiff, a youth seven years old, in company with other school children, was passing along Borum Avenue opposite the gas-plant, one of his companions, who was also a child of tender years, without any animosity or intention to injure the plaintiff "tossed a stone or other heavy substance, which fell or struck in said ditch," which contained matter as above described, and caused some of it "to spatter" and strike the plaintiff in the face and eyes, whereby he was severely burned, causing intense pain and suffering, loss of sight in one eye, and other injuries. The defendant should have anticipated that injury might result to some of the large number of school children traveling along Borum Avenue to and from school, from the discharge of such matter from the gas-plant into the open ditch. On December 14, 1914, the plaintiff presented a written application to the defendant, setting out his claim for damages, and demanding payment thereof, as prescribed in the Civil Code, § 910; and on December 23, 1914, the municipality formally declined payment. The defendant was negligent in maintaining and operating a defective plant for the manufacture of gas, in such manner as to allow the discharge of poisonous and corrosive products along the street. The action was instituted on December 28, 1914. The demurrer was, in substance: (a) The plaintiff failed to allege any negligence upon the part of the defendant, and did not allege facts sufficient to constitute a cause of action. (b) It appeared from the face of the petition that the proximate cause of the alleged injury was the act of a third person, for which the defendant was in no way responsible. (c) It appeared from the face of the petition that the action was barred by the statute of limitations.

*Crum & Jones,* for plaintiff in error.

*Powell & Lumsden* and *J. T. Hill,* contra.

ATKINSON, J. (After stating the foregoing facts.)

1. The first question to be considered is whether the petition alleges a case of negligence against the defendant. Giving due weight to the language of the petition descriptive of the character of the thing which was allowed to escape from the defendant's gas-plant, and the effect thereof upon the plaintiff when brought in contact with his person, the petition is to be construed as alleging

that the thing was inherently dangerous, and needed only to be brought in contact with the person of an individual to produce injury. The danger was a peculiar one, and calculated to produce injury to a person who was unaware of its existence. In this respect it was similar to that flowing from electricity conducted by means of electric wires. Dangers from that source are graphically described in the opinion in the case of *Atlanta Consolidated Street Railway Co.* v. *Owings*, 97 *Ga.* 663 (25 S. E. 377, 33 L. R. A. 798), where it was held: "Where, in the prosecution of its business, a corporation employs a wire which, because of its being charged with a powerful and dangerous current of electricity, is liable, upon coming in contact with the wires of other corporations, to cause injury or death to the employees of the latter while engaged in the performance of their duties, the corporation first referred to is, relatively to such employees, under the duty of observing at least ordinary diligence, not only in preventing such a contact, but also in discovering and preventing its continuance even when occasioned by the negligence of others, including that of a corporation whose employees are thus exposed to danger." The agency may or may not be so deadly as electricity, but in both the danger, though not always apparent, is present, and all that is needed to produce injury to an individual is to be brought in contact with his person. It is unlike the case of a domestic animal, not naturally disposed to viciousness, such as a horse, which, being left on the street, suddenly displays a disposition theretofore unknown to its owner, and bites a person passing near by on the sidewalk. *Reed* v. *Southern Express Co.*, 95 *Ga.* 108 (22 S. E. 133, 51 Am. St. R. 62). In operating its gas-plant, from which there was emitted a dangerous agency of the character above described, it was the duty of the city to exercise ordinary care to prevent it from injuring persons, and in the exercise of such care the degree of precaution required of the city would be commensurate with the danger. From another viewpoint, the city was bound to exercise ordinary care in keeping its streets and sidewalks in a reasonably safe condition for the uses for which they were intended. The dangerous agency involved in this case was alleged to have been allowed to escape from the gas-plant of the defendant in the form of a liquid, and flow in an open ditch in the street near the sidewalk, which was known to be continuously used by the public generally, including the school children of

the town. Owing to the latent dangers of this agency, and its being allowed to flow in an open ditch along the street, in close proximity to the sidewalk, its effect was to render the sidewalk unsafe for the uses for which it was intended, owing to the probability of persons using the sidewalk coming in contact with the dangerous agency and suffering injury therefrom as a result. Under these circumstances it is manifest that the petition alleged a case sufficiently charging the defendant with negligence. See, in this connection, *Wallace* v. *Matthewson*, 143 *Ga.* 236 (84 S. E. 450); *Heidt* v. *Southern Bell Telephone Co.*, 122 *Ga.* 774 (50 S. E. 361); *Eining* v. *Ga. Ry. & El. Co.*, 133 *Ga.* 458 (66 S. E. 237); Irvine *v.* Greenwood, 89 S. C. 511 (72 S. E. 228, 36 L. R. A. (N. S.) 363); Conway *v.* Kinston, 169 N. C. 577 (86 S. E. 524, L. R. A. 1916B, 945); Stone *v.* City of Florence, 94 S. C. 375 (78 S. E. 23); U. S. Natural Gas Co. *v.* Hicks, 134 Ky. 12 (119 S. W. 166, 23 L. R. A. (N. S.) 249, 135 Am. St. R. 407).

2. The main contention of the defendant was that it appeared from the petition that the injury to the plaintiff was due to the intervening act of a third person, for which the defendant was in no wise responsible. It was alleged that the plaintiff, a boy seven years old, was on his way to school; and when on the sidewalk on Borum Avenue opposite the gas-plant, a companion, another boy of tender years, without any intention of injuring the plaintiff, tossed a stone or some other heavy object, which fell into the ditch and caused the liquid, which has been referred to in the preceding division of this opinion as a dangerous agency, to splash and strike the plaintiff in the face and eyes and produce serious injuries. It is provided in the Civil Code, § 4509: "If the damages are only the imaginary or possible result of a tortious act, or other and contingent circumstances preponderate largely in causing the injurious effect, such damages are too remote to be the basis of recovery against the wrong-doer." In the Civil Code, § 4510, it is declared: "Damages which are the legal and natural result of the act done, though contingent to some extent, are not too remote to be recovered. But damages traceable to the act, but not its legal or material consequence, are too remote and contingent." In *Perry* v. *Central Railroad*, 66 *Ga.* 746, the plaintiff was a man of full age and capacity, who brought suit against the defendant railroad on account of its negligence in allowing its train to leave the

depot without giving a proper signal, which negligence caused him to run to catch the train on which he intended to ride as a passenger, and in doing so he came in contact with an engine of another road which was coming into the car-shed. His right leg came in contact with the pilot of the engine and was crushed by it, and had to be amputated. It was there held: "To entitle a party to recover damages of a railroad company on account of the negligence of its agents, it should appear that the negligence was the natural and proximate cause of the injury; for should it appear that the negligence of the railroad company would not have damaged the party complaining but for the interposition of a separate independent agency, over which the railroad company neither had nor exercised control, then the party complaining can not recover." The case to which the ruling quoted above related was cited and distinguished in the case of *Southern Railway Co.* v. *Webb,* 116 *Ga.* 152 (42 S. E. 395, 59 L. R. A. 109). The assignment of error in the latter case was on the refusal to grant a new trial. It appeared that John Webb, while a passenger on the train of the Southern Railway Company, was thrown from the platform of the car on which he was riding, by a sudden jerk of the train, and while lying on the railroad-track was killed by a train of the Georgia Railroad Company, which followed on the same track. The question was raised as to whether the negligence of the Southern Railway Company was the proximate cause of the injury. It was held: "While the general rule is that if, subsequently to the original wrongful or negligent act, a new cause intervened, of itself sufficient to stand as the cause of the misfortune, the former must be considered as too remote, still if the character of the intervening act claimed to break the connection between the original wrongful act and the subsequent injury was such that its probable or natural consequences could reasonably have been anticipated, apprehended, or foreseen by the original wrong-doer, the causal connection is not broken, and the original wrong-doer is responsible for all of the consequences resulting from the intervening act." See also *Macon, Dublin, Savannah R. Co.* v. *Moore,* 125 *Ga.* 810 (54 S. E. 700). In the case of *Bowen* v. *Smith-Hall Grocery Co.,* 141 *Ga.* 721 (82 S. E. 23, 56 L. R. A. (1915D) 617), the facts were as follows: A firm whose place of business abutted on a much-traveled street in a city placed a large quantity of trash and

loose sheets of paper on and near the street and sidewalk on a day when the wind was blowing sharply, without putting it in a receptacle or confining it in any way. The sheets of paper were light and naturally liable to be blown about the street by even a light breeze, and naturally tended to frighten not only excitable and nervous horses and mules, but even quiet and steady ones. The plaintiff, a capable driver, was driving two reasonably well broken, steady, and roadworthy horses along the street. The wind blew some of the paper against the horses' legs, frightening them and causing them to run away, with resulting injury to the plaintiff and his buggy. It was held that the petition was not subject to general demurrer. In the course of the opinion it was said: "If one does a negligent act which alone would not cause injury, but does it under such conditions that it is reasonably and naturally probable that, in connection with the ordinary operations of natural forces, injury will result, the original act will be treated as the proximate cause of such injury, in the absence of the intervention of any independent agency. If he has knowledge that the wind is blowing, or in the ordinary course of nature is likely to blow while the act is in progress, and negligently places large quantities of loose paper where the natural result will be to cause it to be blown against horses in the street, he can not claim that such a wind is an independent intervening cause." In *Mills* v. *Central Railway Co.*, 140 *Ga.* 181 (78 S. E. 816, 33 Ann. Cas. (1914C) 1098), which was an action by a mother for the homicide of her son, the facts were: The plaintiff's three minor sons were walking down the defendant's line of railroad, which was not enclosed, at a place where the traveling public as pedestrians always had full access and free use of the railroad as a pathway, a fact well known to the servants and employees of the defendant. The oldest son, 15 years of age, found lying upon the track between the rails a railroad signal torpedo. The torpedo being a pleasing and attractive looking object, and harmless in its appearance, the oldest boy picked it up and tried to open it, and being unable to do so, after walking a short distance he picked up an iron nut, and placing the torpedo on one of the rails hit it for the purpose of breaking it open, which caused the torpedo to explode, and one of the other sons of plaintiff, eight years of age, standing about 8 feet away and not aware that he was in danger or that any harm could be done by his brother

trying to break open the torpedo, was struck by a piece of it and killed. It was held, on demurrer, that the petition set forth a cause of action. In the course of the opinion it was stated, in substance, that the petition alleged negligence upon the part of the servants of the railroad company in carelessly leaving the torpedo between the rails on the railroad-track; and secondly, that the negligence of the defendant was the proximate cause of the injury. A number of cases were cited in which the principles ruled had been applied. In the case of Whitman McNamara Tobacco Co. *v.* Warren, 23 Ky. L. R. 2120 (66 S. W. 609), the facts were as follows: The plaintiff was a boy five years old. While walking along a sidewalk he met some other boys who jostled and pushed him into a ditch on the edge of the sidewalk, into which the defendant had discharged some hot water. The plaintiff was painfully burned, and brought suit against the defendant for negligently discharging the water, while hot, into the open ditch near the sidewalk. It was held that the question of the defendant's negligence in discharging the hot water into the open ditch, where the plaintiff was scalded, was properly submitted to the jury. It was further held that the fact that the plaintiff was pushed into the ditch by a companion would constitute no defense to the defendant, as the companion's negligence, if any, could not be imputed to plaintiff as contributory negligence. In United States Natural Gas Co. *v.* Hicks, supra, the facts were: The plaintiff was a boy eight years old. He with his brother, who was about four years old, and another boy seven years old, were playing marbles in the street. The defendant, in the construction and operation of its gas lines, constructed and maintained, for the purpose of turning on and cutting off the gas, certain gate-valves, which were incased in a wooden box which extended to the surface of the ground. The defendant allowed one of its boxes to become defective, and large quantities of gas were allowed to escape on account of the rotten condition of the box. While the children were playing in the street, one of their marbles rolled into the box. In order to look into the box, one of the boys got some matches and paper and lit them. The plaintiff was standing on the box at the time. An explosion occurred instantly, which burned the plaintiff's face, hands, and arms. It was held "that defendant's negligence in failing to properly construct and keep

its valve-box in repair, and not the negligence of the child, was the proximate cause of the accident." In the present case the plaintiff was on the street where he had a right to be, as was also the boy who tossed the stone or other heavy object which fell into the ditch. The act of tossing the stone by the boy was done while the negligence of the defendant was in progress; and however done, it was such an act, among many others that might be conceived, which the jury might find that the defendant, as an ordinarily prudent person, should reasonably have anticipated would probably occur, producing such injury as the plaintiff sustained. Under such circumstances the defendant would be responsible for injuries resulting to the plaintiff from its negligence in allowing the material to flow along the open ditch near the sidewalk, without suitable provisions for the protection of persons using the sidewalk.

3. The defendant demurred also on the ground that it appeared from the allegations of the petition that the action was barred by the statute of limitations. It was alleged that the plaintiff received his injury on the 23d day of December, 1912; that on the 14th day of December, 1914, he served upon defendant a written demand for compensation (a copy of which was set forth as an exhibit), which conformed to the requirements of the Civil Code, § 910; and that the defendant had considered the claim, denied liability therefor, and declined payment. A copy of an extract from the minutes of the defendant was attached to the petition, which showed that the mayor and council acted upon the application of the plaintiff on December 22, 1914, and denied any liability for the injury. The action was commenced December 28, 1914. Actions for damages for personal injuries must be commenced within two years from the date of the injury. Civil Code, § 4497. The Civil Code, § 910, provides: "No person, firm, or corporation, having a claim for money damages against any municipal corporation of this State on account of injuries to person or property, shall bring any suit at law or equity against said municipal corporation for the same, without first presenting in writing such claim to the governing authority of said municipality for adjustment, stating the time, place, and extent of such injury, as near as practicable, and the negligence which caused the same; and no such suit shall be entertained by the courts against such mu-

nicipality until the cause of action therein has been first presented to said governing authority for adjustment; provided, that upon the presentation of such claim said governing authority shall consider and act upon the same within thirty days from said presentation, and that the action of said governing authority, unless it results in the settlement thereof, shall in no sense be a bar to a suit therefor in the court; provided, that the running of the statute of limitations shall be suspended during the time that the demand for payment before such authorities is pending, without action on their part." Under this law a demand against the city for compensation is prerequisite to the commencement of an action for damages of the character sought to be recovered in this case. But it is expressly provided that the running of the statute of limitations shall be suspended during the time that the demand for payment before such authorities is pending, without action on their part. From the dates above recited, it appears that the action was not filed until after two years had elapsed from the date of the injury; but if due allowance is made for the time intervening from the date of the service of the written demand upon the city, as provided in the statute, and the time at which they acted upon it, the action was not barred.

*Judgment affirmed. All the Justices concur.*